## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**MASHIKA FANT on behalf of**                          **CIVIL ACTION**
**KARNELL JAMES LEBLANC, JR.**

**VERSUS**                                             **NO. 12-3032**

**CAROLYN W. COLVIN, ACTING COMMISSIONER**             **SECTION "S" (3)**
**SOCIAL SECURITY ADMINISTRATION**

### REPORT AND RECOMMENDATION

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner denying his application for supplemental security income benefits ("SSI") under Title XVI of the SSA.  The matter has been fully briefed on cross-motions for summary judgment and is ripe for review.  For the following reasons, IT IS RECOMMENDED that plaintiff's motion for summary judgment be DENIED, the Commissioner's cross-motion be GRANTED, and plaintiff's case be DISMISSED WITH PREJUDICE.[1]

## I.    BACKGROUND

Plaintiff's mother filed an application for SSI on behalf of plaintiff on April 18, 2009, alleging a disability onset date of December 5, 2004. (Adm. Rec. at 89-92).  Plaintiff alleged disability due to attention deficit hyperactivity disorder ("ADHD") and bipolar disorder. (*Id.* at 131. Plaintiff, born on September 11, 2001 was three years old on the date on which he alleged disability

---

[1]    On the record, the Court refers to Karnell James LeBlanc, Jr. as "plaintiff."  The Court notes, however, that it is obviously counsel and his mother who advance the arguments in support of a finding of disabled.

and nine years old at the time of the final administrative decision.  (*Id.* at 89).  Plaintiff was in the second grade at the time of the application and has no past relevant work experience.  (*Id.* at 134-35).

Defendant initially denied plaintiff's application on August 3, 2010. (*Id.* at 40-48).  Plaintiff sought an administrative hearing, which defendant held on March 10, 2011. (*Id.* at 25-39).  Plaintiff and his mother testified at the hearing.

On May 25, 2011, the administrative law judge ("ALJ") issued a decision in which he found that plaintiff did not meet the definition of disability through the date of the decision.  (*Id.* at 10-21).  In the decision, the ALJ concluded that plaintiff has the severe impairments of oppositional defiant disorder and ADHD.  (*Id.* at 13).  The ALJ held that plaintiff did not have an impairment or a combination of impairments that meets or medically equals a listed impairment under the regulations.  (*Id.*).  The ALJ also found that plaintiff does not have an impairment or combination of impairments that functionally equals the listings.  (*Id.*). The ALJ thus denied plaintiff's application for SSI.  (*Id.* at 21).

Plaintiff asked the Appeals Council to review the ALJ's conclusion that he is not disabled.  (*Id.* at 5-6). On September 21, 2012, the Appeals Council denied plaintiff's request.  (*Id.* at 1-4).  Plaintiff then timely filed this civil action.

## II.    STANDARD OF REVIEW

The function of a district court on judicial review is limited to determining whether there is "substantial evidence" in the record, as a whole, to support the final decision of the Commissioner as trier of fact, and whether the Commissioner applied the appropriate legal standards to evaluate

the evidence.  *See* 42 U.S.C. § 405(g); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir.1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir.1995); *Carriere v. Sullivan*, 944 F.2d 243, 245 (5th Cir.1991). If the Commissioner's findings are supported by substantial evidence, this Court must affirm them. *Martinez*, 64 F.3d at 173.

"Substantial evidence" is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401(1971); *Masterson v. Barnhart,* 309 F.3d 267, 272 (5th Cir. 2002).   It is more than a scintilla, but may be less than a preponderance. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir.1993).  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision.  *See Boyd v. Apfel*, 239 F.3d  698, 704 (5th Cir. 2002).

A district court may not try the issues *de novo*, re-weigh the evidence, or substitute its own judgment for that of the Commissioner.  *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir.1995); *Spellman*, 1 F.3d at 360. The Commissioner is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. *See Arkansas v. Oklahoma*, 503 U.S. 91, 112-13 (1992).  Conflicts in the evidence are for the Commissioner to resolve, not the courts.  *Carey,* 230 F.3d at 135.  Any of the Commissioner's findings of fact that are supported by substantial evidence are conclusive. *Ripley*, 67 F.3d at 555.  Despite this Court's limited function on review, the Court must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it.  *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir.1992); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir.1990).

III.    ENTITLEMENT TO BENEFITS UNDER THE ACT

To be considered disabled and eligible for disability benefits under the Act, plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant, such as the plaintiff, is considered disabled only if his physical or mental impairment is so severe that he is unable to do not only his previous work, but cannot, considering his age, education and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which he lives, whether a specific job vacancy exists, or whether he would be hired if he applied for work. 42 U.S.C. § 1382(a)(3)(B).  The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability.  20 C.F.R. §§ 404.1501 - 404.1599 & Appendices, §§ 416.901 t - 416.988 (1995).  The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity.  *Id.* §§ 404.1520, 416.920; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir.1994).

In *Shave v. Apfel*, 238 F.3d 592 (5th Cir.2001), the Fifth Circuit restated the five-step procedure to make a disability determination under the Social Security Act:

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." To determine whether a claimant is disabled, and thus entitled to disability benefits, a

4

five-step analysis is employed. First, the claimant must not be presently working at any substantial gainful activity. Second, the claimant must have an impairment or combination of impairments that are severe. An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations. Fourth, the impairment must prevent the claimant from returning to his past relevant work. Fifth, the impairment must prevent the claimant from doing any relevant work, considering the claimant's residual functional capacity, age, education and past work experience. At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant acquits this responsibility, at step five the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work.

*Shave*, 238 F.3d at 594 (quoting *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir.1999)). If the ALJ determines that a plaintiff is not disabled under Step V of the five-part test, the ALJ must establish that the claimant has a "residual functional capacity," given the claimant's age, education, and past work experience, to perform other work available in the national economy. *Leggett v. Chater*, 67 F.3d 558, 564 n.11 (5th Cir. 1995). Step V also requires the Commissioner to use the medical-vocational guidelines to make his disability determination. *Id.*

The four elements of proof weighed to determine whether evidence of disability is substantial are: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir.1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Id.*

## IV.   ISSUES ON APPEAL

There is one issue on appeal:

(1)     Whether substantial evidence supports the ALJ's conclusion that plaintiff does not have an extreme limitation in one domain of functioning.

**V.      ANALYSIS**

**1.      Whether substantial evidence supports the ALJ's conclusion that plaintiff does not have an extreme limitation in one domain of functioning.**

Plaintiff contends that the medical evidence, school records and testimony of his mother all support that he is disabled.  Plaintiff argues that the ALJ disregarded his medical and school records.  He maintains that such records demonstrate that he is an "extremely disturbed child."  He concludes that the evidence reveals that he has an extreme limitation in interacting and relating to others.[2]  The Court rejects this argument.

Once the ALJ found that plaintiff did not meet or medically equal any listed impairment, she next considered whether plaintiff functionally equaled a listed impairment by reviewing his abilities in six broad domains. 20 C.F.R. § 416.926a. The ALJ exhaustively listed and considered the evidence as a whole in assessing plaintiff's functioning in the six domains. (Adm. Rec. at 13-21); 20 C.F.R. §§ 416.924a, 416.926a(a), (b).  To establish whether a claimant functionally equals a listed impairment in the broad domains, that claimant must demonstrate that he has marked limitations in at least two domains or an extreme limitation in one domain.  20 C.F.R. § 416.926a(a).

The ALJ found that plaintiff had no limitation in the domains of acquiring and using information, moving and manipulating objects, caring for himself, and health and physical well-being. (*Id.* at 16, 19-21).  She also found that plaintiff had less than marked limitation in

---

[2]      The Court addresses only the ALJ's conclusion that plaintiff has no extreme limitation in interacting and relating to others.  Plaintiff challenged no other conclusion of the ALJ.

6

attending and completing tasks. (*Id.* at 17). She further found that plaintiff had a marked limitation in interacting and relating to others. (*Id.* at 18). Therefore, plaintiff failed to meet his burden of proving that his impairments resulted in marked limitations in two domains of functioning or an extreme limitation in one domain, *i.e.*, that his impairments functionally equaled the listings. See 20 C.F.R. § 416.926a(a).

Plaintiff argues that the ALJ erred by not determining that he had an extreme limitation in the domain of interacting and relating to others.  The domain of interacting and relating to others involves considering how well a child is able to initiate and sustain emotional connections with others, develop and use the language of the community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others.  20 C.F.R. § 416.926a(i). Interacting and relating to others relates to all aspects of social interaction at home, at school, and in the community.  *Id.* § 416.926a(i)(1)(iv); *see* Social Security Ruling ("SSR") 09-5p, 2009 WL 396026, *2. Because communication is essential to both interacting and relating, this domain considers the speech and language skills that children need to speak intelligibly and to understand and use the language of their community. SSR 09-5p, 2009 WL 396026, *2.  A child has an "extreme" limitation in a domain when his impairments interfere "very seriously" with his ability to independently initiate, sustain, or complete activities. *See id.* § 416.926a(e)(3).  As noted above, plaintiff maintains that the ALJ failed to give proper emphasis to his diagnosis, the testimony of his mother, and the copious medical records detailing his extreme behavior in spite of medication prescribed and used by him.  However, and as the Commissioner correctly notes, the ALJ properly considered the evidence as a whole, and that evidence supports her findings.

First, the ALJ acknowledged the diagnosis – and concluded that plaintiff has the severe impairment – of oppositional defiant disorder. (Adm. Rec. at 18, 182, 240). However, the mere diagnosis of an impairment does not establish a disabling impairment or even a significant impact on that person's functional capacity. *See Harper v. Sullivan*, 887 F.2d 92, 97 (5th Cir. 1989); *Hames v. Harper*, 707 F.2d 162, 166 (5th Cir. 1983). The ALJ noted that plaintiff's primary problem appears to be his behavior. (Adm. Rec. at 14). However, she observed that plaintiff's second-grade teacher did not note any significant problems in the area of interacting and relating with others. (*Id.* at 31, 109-110). Notably, plaintiff's teacher did not note significant problems in any area of functioning. (*Id.* at 107-113). In fact, plaintiff's teacher stated that his mother described problems at home that were not apparent in the school setting. (*Id.* at 107). Plaintiff's teacher also noted that his mother was referred for mental health services for her and the entire family. (*Id.* at 107).

With regard to interacting and relating to others, plaintiff's teacher observed no problems with playing cooperatively with other children; making and keeping friends; seeking attention appropriately; asking permission appropriately; following rules; respecting/obeying adults in authority; relating experiences and telling stories; using language appropriate to the situation and listener; introducing and maintaining relevant and appropriate topics of conversation; taking turns in a conversation; interpreting meaning of facial expression, body language, hints, and sarcasm; and using adequate vocabulary and grammar to express thoughts/ideas in general, everyday conversation. (*Id.* at 109). Plaintiff's teacher only observed a slight problem with expressing anger appropriately. (*Id.*). However, she noted that it had not been necessary to implement behavior modification strategies for plaintiff (*Id.*). She further noted that she could understand almost all of

8

plaintiff's speech when the topic was known, and she could understand one and a half to two-thirds when the topic was unknown. (*Id.* at 110). The foregoing evidence from plaintiff's teacher reflects that he did not have extreme limitations in interacting and relating to others in the school setting.

Contrary to plaintiff's argument, the ALJ also properly considered his mother's testimony. (*Id.* at 14, 18). Regarding his time at school, plaintiff's mother testified that he had been suspended about five times during the 2010-2011 school year. (*Id.* at 32). However, the school records revealed only one suspension in 2011 for 2 days with a referral to social services for behavior problems. (*Id.* at 18, 31, 155-156). Plaintiff's previous suspension was in 2009 for 3 days with a referral to social services for behavior problems. (*Id.* at 95-96), as Plaintiff's teacher noted. (*Id.* at 107).

Plaintiff's mother also testified that his grades were good but his behavior was not. (*Id.* at 14, 32). He gets along with his teachers "when he does not have his spells." (*Id.*). He takes medication on a regular basis and can not stay in school without the "day" medication. (*Id.*). He will not sleep without the "night" medication. (*Id.*). He takes four medications. (*Id.* at 14, 34). Focalin and Adderall keep him still while he is in school, and Depakote and Seroquel make him sleep at night. (*Id.* at 34). While plaintiff now alleges that he experienced extreme behavior in spite of the medication that he was prescribed and utilized, his mother did not testify at the hearing that that the medications were ineffective. (*Id.*).

Regarding his time at home, plaintiff's mother testified that he does not get along with his brother. (*Id.* at 14, 34). They fight all the time. (*Id.*). Plaintiff screams, throws tantrums, and throws and breaks things. (*Id.* at 14, 34, 180). He has jumped on his aunt and fought with her. (*Id.* at 18,

35). He has no respect for authority and is not afraid of the police or anybody.  (*Id.* at 18, 35). Plaintiff's mother also completed a child behavior checklist when she took him for a psychological evaluation with Karl A. Whitlock, Psy. D., in February 2006. (*Id.* at 175-182). On the checklist, she indicated clinically significant problems in the areas of aggression, breaking rules, disorganized thinking, and inattention. (*Id.* at 181).

Notably, Whitlock stated that it was likely that plaintiff's mother exaggerated the extent of plaintiff's behavior problems, as Whitlock found that there were significant discrepancies between the mother's report and plaintiff's behavior during the evaluation. (*Id.*).  Whitlock observed that during the evaluation, plaintiff's mood was normal and his emotional tone was full-range. (*Id.*). Plaintiff played appropriately in the room with his mother as she discussed the background information. (*Id.*). He displayed no obvious signs of hyperactivity, poor impulse control, or inattention during the evaluation. (*Id.*). He was generally polite and interacted without significant problems with his examiner. (*Id.*). There was no evidence of thought disorder, mood disorder, or anxiety during the evaluation. (*Id.*). The foregoing evidence from the examining psychologist reflects that plaintiff did not have extreme limitations in interacting and relating to others in the school setting. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record.").

Further, the record contains evaluations by Disability Determination Services ("DDS") that do not support a finding that plaintiff had extreme limitations in interacting and relating to others. (*Id.* at183-191).  Specifically, on March 3, 2006, DDS consultants opined that plaintiff did not have

an impairment or combination of impairments that met, medically equaled, or functionally equaled the listings. (*Id.* at 183). Notably, they opined that plaintiff was "less than marked" in interacting and relating to others. (*Id.* at 185). On March 21, 2006, another DDS consultant agreed with the opinion provided in the March 3, 2006 evaluation. (*Id.* at 189-191). While these non-examining consultants were assigned no weight by the ALJ, (*id.* at 15), their opinions still provide support for her finding.

To the extent that plaintiff's mother's testimony could be read to indicate that plaintiff had extreme limitations, the testimony simply is not supported by the record as set forth above, as discussed by the ALJ and as outlined by the Commissioner in her memorandum in support. (*Id.* at 13-21). The ALJ was aware of the requirements of functional equivalency and correctly decided plaintiff's claim. Moreover, plaintiff failed to present evidence to support his mother's testimony. Therefore, plaintiff failed to meet his burden of providing evidence that he was disabled within the meaning of the Act.

## VI. CONCLUSION

Accordingly,

**IT IS RECOMMENDED** that plaintiff's Motion for Summary Judgment be DENIED, the Commissioner's Cross-Motion be GRANTED and that plaintiff's case be DISMISSED WITH PREJUDICE.

### NOTICE OF RIGHT TO OBJECT

Objections must be: (1) specific, (2) in writing, and (3) served within fourteen (14) days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 1(a), 6(b) and 72(b). A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge;

11

and (2) appellate review of the un-objected-to factual findings and legal conclusions accepted by the district court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 9th day of September, 2013.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

12